UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KRISTI N. BAGEANT-EPPERSON,

               Plaintiff,

vs.                                 Case No.: 3:13-cv-00969-J-34JRK

CITIGROUP, INC.,

               Defendant.

_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND COMPEL ARBITRATION
<u>AND MEMORANDUM OF LAW</u>**

Plaintiff Kristi N. Bageant-Epperson ("Plaintiff") hereby responds to the Motion to Dismiss and Compel Arbitration of Defendant Citigroup, Inc. ("Citi"), which relies on Citi's 2013 Employment Arbitration Policy ("Arbitration Policy"). The Court should deny the Motion because Citi cannot enforce an illusory and unconscionable contract.  In the alternative, if it compels arbitration, the Court should order a stay, not dismissal, in accordance with 9 U.S.C. § 3.  Plaintiff offers the following memorandum of law in support.

## MEMORANDUM OF LAW

Citi, in effect, promises nothing in its illusory Arbitration Policy.  Employees must arbitrate all their claims, but Citi stays free to bring its claims in court or arbitration.  A thirty-day waiting period is all Citi must suffer to access a judicial forum.  Employees, of course, are entirely shut out.  By imposing this one-way limitation, the Arbitration Policy allows Citi "to fight freestyle, while requiring [Plaintiff] to follow Marquis of Queensberry rules." *R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 392 (1992).  Florida law deems such an illusory contract invalid.

This same remedial imbalance renders Citi's Arbitration Policy substantively unconscionable.  That Policy—a contract of adhesion—is also procedurally unconscionable.  Citi forced Plaintiff to click an internet link to acknowledge receipt of its Arbitration Policy before ever allowing her to read it.  Even if Citi let employees see the policy before assenting, Plaintiff could not object because she had invested two decades in her stellar career with Citi.  The Court should refuse to enforce Citi's procedurally and substantively unconscionable Arbitration Policy.

However, if arbitration is compelled, 9 U.S.C. § 3 and the Eleventh Circuit instruct that "the action be stayed pending arbitration." *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (per curiam).

## A.   Citi's Arbitration Policy Does Not Bind Plaintiff.

*1.   Standard*

Arbitration is a matter of contract. *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986). A party seeking to compel arbitration must show that "the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). Courts applying the Federal Arbitration Act "must place arbitration agreements on an equal footing with other contracts." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011).

The Federal Arbitration Act (FAA) establishes a bedrock precondition of mutual, affirmative consent: "Arbitration under the [FAA] is a matter of consent, not coercion . . . ." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Absent a contract to arbitrate, the FAA does not apply. 9 U.S.C. § 2 ("A written provision in . . . a *contract* . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, *save upon*

3

*such grounds as exist at law or in equity for the revocation of any contract*." (emphasis added)).

2.      *The Arbitration Policy Is Illusory.*

"Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound." *Rosenberg v. Lawrence*, 541 So. 2d 1204, 1206 (Fla. 3d DCA 1988) (citing *Miami Coca-Cola Bottling Co. v. Orange-Crush Co.,* 291 F. 102 (S.D. Fla. 1923)). "An illusory promise is no promise at all as that term has been . . . defined.  If the expression appears to have the form of a promise, this appearance is 'an illusion.'" *Id.* (alteration in original) (quoting 1 *Corbin on Contracts* § 16 (1963)) (internal quotation marks omitted).

In its Arbitration Policy, "Citi reserves the right to revise, amend, modify, or discontinue the Policy at any time in its sole discretion with 30 calendar days' written notice."  Decl. of Nancy Hoover Ubal, Ex. A (hereinafter "Ubal Decl.") (Doc. No. 5-1 at 14).  Citi effectively makes no promise to arbitrate any claims it may have against its employees.  Citi can always choose a judicial forum for its claims, so long as thirty days before filing its complaint Citi notifies the employee that it is discontinuing the Arbitration Policy concerning her.  Plaintiff cannot be

4

bound to an Arbitration Policy that Citi is free to avoid. *See Pan-Am Tobacco Corp. v. Dep't of Corrections*, 471 So. 2d 4, 5 (Fla. 1984) ("It is basic hornbook law that a contract which is not mutually enforceable is an illusory contract.").

No Florida case directly addresses the significance of a notice provision in an otherwise illusory contract. Some out-of-state courts recognize that allowing for notice of a unilateral modification does not save an illusory contract. *See, e.g.*, *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) (California law) ("Although the agreement requires Circuit City to provide exiguous [30-day] notice to its employees of termination or any modification, such notice is trivial when there is no meaningful opportunity to negotiate the terms of the agreement." (footnote omitted)); *Peleg v. Neiman Marcus Group, Inc.*, 140 Cal. Rptr. 3d 38, 58 (Cal. Ct. App. 2012) (Texas law) ("[The 30-day notice provision] merely delays, for an insignificant period, the company's 'right to decide . . . the nature or extent of [its] performance.'" (alteration in original) (quoting 1 *Williston on Contracts* § 4:27 (4th ed. 2007))). However, other courts find notice keeps contracts from being illusory. *See, e.g.*, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1374 (11th Cir. 2005) (Georgia law); *Canales v. Univ. of Phoenix, Inc.*, 854 F. Supp. 2d 119, 124 (D. Me. 2012) (Maine law).

Core principles of Florida law dictate that a thirty-day warning cannot salvage a contract in which one party effectively promises nothing.  "A contract is illusory under Florida law when 'one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, "I will if I want to.""" *Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331 (11th Cir. 2010) (quoting *Johnson Entertainers of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1311 (11th Cir. 1998)).  When faced with analogous attempts by one party to limit the remedies of another, Florida courts have refused to enforce real estate contracts when that party does not limit its own options:

> In this contract, the seller's obligations are wholly illusory, while the buyers' are quite real. . . . "Sauce for the goose is sauce for the gander." The parties can stipulate to different kinds of "sauces," but both parties must have genuine, not illusory, obligations. The relative "remedies" provided in this contract to the buyer vis-a-vis the developer are neither mutual nor reasonable.

*Ocean Dunes of Hutchinson Island Dev. Corp. v. Colangelo*, 463 So. 2d 437, 439–40 (Fla. 4th DCA 1985); *see also Blue Lakes Apartments, Ltd. v. George Gowing, Inc.*, 464 So. 2d 705, 709 (Fla. 4th DCA 1985) ("Blue Lakes' heads-I-win, tails-you-lose approach to defaults is so rapaciously skewed as to be patently unreasonable.  It subverts the contract by permitting one party to breach with impunity. . . . Such

6

provisions are antithetical to the concept of fair dealing in the marketplace and will not be enforced by courts of law.").

Though Citi's unilateral changes to the Arbitration Policy "will apply prospectively only," Citi can still bring its own claims in either a judicial or arbitral forum.  Ubal Decl. (Doc. No. 5-1 at 14).  Moreover, although changes must be prospective, they can affect existing employee claims that have ripened, but have not yet been filed.[1]

Without additional consideration, mutuality of obligation is essential.  *See Handi-Van, Inc. v. Broward County*, 116 So. 3d 530, 540 (Fla. 4th DCA 2013). Besides its illusory promise to submit claims to arbitration, Citi gave no valid consideration—Citi specifically disclaimed any promise of continuing employment. *Compare Cintas Corp. No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005) ("[T]he consideration for the contract was the promise of continued employment,

---

[1] *See Peleg*, 140 Cal. Rptr. 3d at 62 (describing a hypothetical that "demonstrate[s] the mischief permitted by an illusory arbitration agreement. For instance, [Defendant] could learn about a California employee's sexual harassment claim when the employee raises the issue with the personnel department in an effort to resolve the dispute informally. The company then conducts an investigation, determines the claim might have merit, and decides to change the Agreement to provide greater protection against liability. . . . Because the parties appear close to a settlement of the sexual harassment matter, the employee does not file a claim with the AAA within 30 days after notice. Ultimately, the dispute is not amicably resolved, and, upon initiating arbitration, the employee is bound by the new provisions.").

increased pay and benefits."), *with* Ubal Decl. (Doc. No. 5-1 at 2) ("[N]othing in this Handbook constitutes a guarantee that your employment will continue for any specified period of time."). Citi cannot speak out of both sides of its mouth, claiming consideration was satisfied by the promise of continued employment, but that it made no promise of continued employment. *See, e.g.*, *Douglas v. Johnson Real Estate Investors*, LLC, 470 F. App'x 823, 826 (11th Cir. 2012) (per curiam) (finding continued employment was insufficient consideration for unilaterally modifiable employee handbook under Massachusetts law.)[2]

---

[2] No Florida case has ruled on the adequacy of continued employment as the sole consideration for an arbitration agreement. To the extent *Tranchant v. Ritz Carlton Hotel Co.* found sufficient consideration, that case's brief analysis does not define Florida law; it cited only two cases, neither involving arbitration agreements. No. 2:10-cv-233-FtM-29DNF, 2011 WL 1230734 (M.D. Fla. Mar. 31, 2011). The Court should instead look to the persuasive precedent of other jurisdictions that have recognized that, for purposes of an arbitration agreement, "consideration for a valid contract between an employer and an at-will employee cannot depend on continued employment because such a promise is illusory." *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 388 (Tex. App. 1998); *Snow v. BE & K Constr. Co.*, 126 F. Supp. 2d 5, 13 (D. Me. 2001) ("Plaintiff's performance (continuing to work for Defendant) cannot be viewed as consideration unless Defendant made a promise in return."); *see also, e.g.*, *Phox v. Atriums Management Co.*, 230 F. Supp. 2d 1279, 1283 (D. Kan. 2002); *Gourley v. Yellow Transp., LLC*, 178 F. Supp. 2d 1196, 1203 (D. Colo. 2001); *Trumbull v. Century Marketing Corp.*, 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998); *Peleg*, 140 Cal. Rptr. 3d at 57–58.

3.      *The Arbitration Policy Is Unconscionable.*

Florida courts may refuse to enforce arbitration agreements that are procedurally and substantively unconscionable. *Palm Beach Motor Cars Ltd. v. Jeffries*, 885 So. 2d 990, 992 (Fla. 4th DCA 2004). "Procedural unconscionability relates to the manner in which the contract was entered and involves such issues as 'the relative bargaining power of the parties and their ability to know and understand the disputed contract terms.'" *Id.* at 992 (quoting *Stewart Agency, Inc. v. Robinson*, 855 So. 2d 726, 727–28 (Fla. 4th DCA 2003)) (internal quotation marks omitted). "Substantive unconscionability focuses on the actual agreement and whether the terms are unreasonable and unfair." *Id.* (quoting *Stewart Agency*, 855 So. 2d at 728) (internal quotation marks omitted).  The analytical method for weighing procedural alongside substantive unconscionability is unsettled.[3]  But under any approach taken by Florida courts, Citi's procedurally and substantively unconscionable Arbitration Policy is unenforceable.

---

[3] *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010) ("[T]here is a question as to the analytical method—balancing, sliding scale or independent analysis—courts should use in considering procedural and substantive unconscionability issues under Florida law, which we conclude should be certified to the Florida Supreme Court."), *cert. denied by Pendergast v. Sprint Nextel Corp.*, 97 So. 3d 824 (Fla. 2012).

*(i)      Procedural Unconscionability*

An arbitration agreement is procedurally unconscionable if there is an absence of meaningful choice or a disparity in the parties' relative bargaining power. *FL-Carrollwood Care, LLC v. Gordon*, 72 So. 3d 162, 165 (Fla. 2d DCA 2011). Florida courts look to four factors in determining procedural unconscionability:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*Ownings v. T-Mobile USA, Inc.*, No. 3:12-CV-1385-J-12-TEM, 2013 WL 4401824, at *6 (M.D. Fla. Aug. 15, 2013) (quoting *Dorward v. Macy's, Inc.,* No. 2:10-cv-669-FtM-29DNF, 2011 WL 2893118, at *5 (M.D. Fla. July 20, 2011)).

Courts applying these factors find the existence of a contract of adhesion to be a strong indicator of procedural unconscionability because it suggests the absence of meaningful choice.  *See Powertel v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999); *see also Bhim v. Rent-A-Center*, Inc., 655 F. Supp. 2d 1307, 1313 n.3 (S.D. Fla. 2009) ("[T]he presence of an adhesion contract may be a 'strong indicator' of

procedural unconscionability but does not, on its own, require a finding of procedural unconscionability.").[4]   An adhesion contract is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength [Citi], relegates to the subscribing party [Plaintiff] only the opportunity to *adhere* to the contract or *reject* it." *Pasteur Health Plan, Inc. v. Salazar*, 658 So. 2d 543, 544 (Fla. 3d DCA 1995) (quoting *Seaboard Fin. Co. v. Mutual Bankers Corp.*, 223 So. 2d 778, 782 (Fla. 2d DCA 1969)).   Plaintiff opened an email link leading to a uniform Employee Handbook that contained a non-negotiable Arbitration Policy drafted by Citi—a classic contract of adhesion.

Additional factors indicate procedural unconscionability.  Decisively, Plaintiff had no meaningful choice when the Arbitration Policy was distributed, because Citi forced Plaintiff to acknowledge the policy *before* she was permitted to download or

---

[4] The court in *Bhim* failed to find procedural unconscionability when the plaintiff asserted only that an arbitration agreement was an adhesion contract but introduced no other considerations, without suggesting "that she lacked an opportunity to read and review the Agreement, or that she signed the Agreement unknowingly or involuntarily."  655 F. Supp. 2d at 1314–15.   Here, Plaintiff could neither read nor review the Arbitration Policy before confirming her acknowledgement, and her career with Citi left her no meaningful choice in assenting to the Policy.  *See* Decl. of Kristi N. Bageant-Epperson ¶¶ 11, 13, filed contemporaneously herewith (hereinafter "Bageant-Epperson Decl.").  *Cf., e.g.*, *Billingsley v. Citi Trends, Inc.*, No. 4:12-CV-0627-KOB, 2013 WL 2350163, at *5 (N.D. Ala. May 29, 2013) ("[T]he [employees] had absolutely no bargaining power when Citi Trends presented the Agreements to them."); *id.* at *7 ("The Agreement itself gave [employees] no meaningful choice.").

11

print the Employee Handbook that contained it.  The "Acknowledgement Receipt" establishes only that Plaintiff opened an email alerting her to the distribution of the Handbook—not that she agreed to abide by a policy she could not yet read.  Ubal Decl. (Doc. No. 5-1 at 2).  When Plaintiff clicked her acknowledgement, she could not have understood how it affected her federal statutory right to be free from sex-based discrimination.

Nor did Plaintiff have a meaningful choice to reject the Arbitration Policy, even after Citi allowed her to access it.  *See Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574–75 (Fla. 1st DCA 1999) (finding procedural unconscionability when customers had no choice but to agree to a new arbitration clause if they wished to continue to use cellular plans they had previously purchased).  Plaintiff has committed her entire professional career to Citi.  Bageant-Epperson Decl. ¶ 3.  In 1990, fresh out of college, she worked as a Customer Service Unit Manager making $27,000 annually.  *Id*. ¶ 4.  Through two decades of dedication and accomplishment, she rose through the ranks, earning nine successive promotions.  *See id*. ¶¶ 6–10.  In 2011, she became, simultaneously, Managing Director of Global Consumer Strategic Execution (only two reporting-steps removed from Citi's CEO), and Site President for Citi's 4,600-employee Jacksonville operations.  *Id*. ¶ 10.  She received compensation commensurate to her achievements and her level of responsibility,

12

earning $900,000 in 2011.  *Id.*  After investing her life's time, energy, and skill with Citi, she, like the *Powertel* plaintiffs, had no real option to reject the Arbitration Policy.

Finally, courts find arbitration agreements nestled within unwieldy documents to be procedurally unconscionable, even if the agreement is not "hidden in the fine print."  *Romano ex rel. Romano v. Manor Care, Inc.*, 861 So. 2d 59, 63 (Fla. 4th DCA 2003); *id.* at 61 (refusing to enforce "a six-page arbitration agreement" presented along with "eight [other] documents"); *see also Prieto v. Healthcare & Ret. Corp. of Am.*, 919 So. 2d 531, 533 (Fla. 3d DCA 2005) (same when nursing home "arbitration agreement was included in a package of numerous documents").  *But see Nat'l Fin. Svs., LLC v. Mahan*, 19 So. 3d 1134, 1137 (Fla. 3d DCA 2009) (distinguishing from *Romano* and *Prieto* an arbitration provision that "was a short and simple paragraph that was itself part of a short and simple four-page application").  Citi's Arbitration Policy was found in Appendix A, on pages 53 through 57 of a Handbook that stretched more than seventy pages.  *See* Ubal Decl. ¶ 4 & Ex. A.

Citi forced a contract of adhesion upon Plaintiff before she had a chance to see it, much less a meaningful choice to agree to it.  The Arbitration Policy is procedurally unconscionable.

(ii)     *Substantive Unconscionability*

The second aspect of the unconscionability inquiry asks whether an agreement satisfies substantive notions of basic fairness.   "A substantively unconscionable contract is one that 'no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'"  *Woebse v. Health Care & Ret. Corp. of Am.*, 977 So. 2d 630, 632 (Fla. 2d DCA 2008) (quoting *Hume v. United States*, 132 U.S. 406, 411 (1889)).   In Florida, "[w]here one party is bound to arbitration of its claims but the other is not, there can be substantive unconscionability." *Jeffries*, 885 So. 2d at 992; *see also Bellsouth Mobility LLC v. Christopher*, 819 So. 2d 171, 173 (Fla. 4th DCA 2002) ("Although customers are bound to arbitration, [Defendant] still has the option of pursuing court action in some instances . . . .  In short, the clause gives [Defendant] an unfair advantage."). [5]

_____

[5] *Tranchant v. Ritz Carlton Hotel Co.* distinguished these cases in part on the ground that the *Tranchant* arbitration agreement was "limited in scope."  No. 2:10-CV-233-

The Arbitration Policy is substantively unconscionable because, as discussed above, Citi is not bound to arbitrate any of its own claims.  In this case, Plaintiff sues Citi for sex-based employment discrimination, and Citi claims she is bound to an Arbitration Policy that she cannot rescind or amend.  But if Citi had brought claims against Plaintiff, Citi could have chosen a judicial forum, so long as, at least thirty days before filing its complaint, Citi discontinued the Arbitration Policy.

Despite what Citi says, *Pendergast v. Sprint Nextel Corp.* is irrelevant because, as discussed above, Citi gave no valid consideration.  592 F.3d 1119 (11th Cir. 2010).  In *Pendergast*, Sprint gave customers two-year contracts for continuing cellular service; here, Plaintiff's employment was at-will.  Regardless, substantive unconscionability can exist even if the original contract included valid consideration, when, viewed as a whole, the arrangement violates notions of basic fairness.  *See Jeffries*, 885 So. 2d at 992 (holding arbitration agreement as part of car purchase substantively unconscionable).

---

FtM-29DNF, 2011 WL 1230734, at *6 (M.D. Fla. Mar. 31, 2011).  Here, the sweeping Arbitration Policy applies to "all employment-related disputes."  Ubal Decl. (Doc. No. 5-1 at 10).

15

(iii)     *Severance Is Insufficient to Cure the Unconscionability.*

Instead of refusing to enforce an unconscionable contract, a court may sever discrete provisions causing the unconscionability "where the invalid provisions do not go to the essence of the parties' contract and where there remain valid legal obligations even after severing the invalid provisions." *FL-Carrollwood Care, LLC v. Gordon*, 72 So. 3d 162, 167 (Fla. 2d DCA 2011). Severance is only appropriate if "the void provision can be severed without affecting the intent of the parties to arbitrate." *Id.* (quoting *Alterra Healthcare Corp. v. Bryant,* 937 So. 2d 263 (Fla. 4th DCA 2006))(internal quotation marks omitted). Unlike severable provisions, Citi's unilateral ability to alter any or all of the Arbitration Policy lies at the core of Citi's intent in contracting. Citi would have made a fundamentally different deal by promulgating a policy that restricted its opportunity to amend—and thus stripped it of its freedom to choose a judicial forum for its own claims.

4.     *Conclusion*

Citi cites cases enforcing similar agreements, nearly all from other jurisdictions, and nearly all devoting no discussion to the illusoriness or

unconscionability of the Arbitration Policy.[6]  Closer inspection against Florida law shows Citi's Arbitration Policy is unenforceable.  Some employers may think it a best practice to impose such a policy as an "arbitration agreement"—an agreement of one.  To the extent this phenomenon is widespread, the law requires resistance, not resignation.  "The fact that a community or group of persons is accustomed to act as if a promise that is contrary to an established rule of law were binding will make no difference."  12 *Williston on Contracts* § 34:10 (4th ed. 1999); *see also State ex rel. Burr v. Jacksonville Terminal Co.*, 106 So. 576, 584–85 (Fla. 1925) ("Any contract made, and any usage, custom, or practice observed, . . . is, under the Constitution and laws of this state, subject to lawful governmental rules and regulations . . . ."). Its Motion makes hay out of the spate of recent Supreme Court arbitration rulings, but Citi cannot skip those cases' first, fundamental step: here, there is no contract. The Arbitration Policy does not bind Plaintiff.

---

[6] The one case cited by Citi applying Florida law to its Arbitration Policy is *De Oliveira v. Citicorp North America, Inc.*, which involved only "whether a collective action waiver in an arbitration agreement is unenforceable."  No. 8:12-CV-251-T-26TGW, 2012 WL 1831230, at *1 (M.D. Fla. May 18, 2012).  The other cited cases generally include no significant analysis of illusoriness or unconscionability.

**B.      If the Court Compels Arbitration, It Should Order a Stay of Proceedings, Not Dismissal.**

9 U.S.C. § 3 states that a district court "shall on application of one of the parties stay the trial of the action until . . . arbitration has been had in accordance with the terms of the agreement."  Therefore, "[u]pon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."  *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (per curiam).

Citi does not cite *Bender*, and omits that, "[i]n what appears to be its most direct discussion of this question, the Eleventh Circuit has expressed its preference that district courts stay arbitrable claims rather than dismiss them."  *Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1315 (S.D. Fla. 2009); *see also Bender*, 971 F.2d at 699 ("We find that the state law claims are subject to arbitration, but that it was error to dismiss these claims rather than staying them pending arbitration.").  Even when mandating arbitration on all claims, "the vast majority of district courts in the Eleventh Circuit stay arbitrable claims pending arbitration, citing the express language of 9 U.S.C. § 3."  *Pilitz v. Bluegreen Corp.*, No. 6:11-CV-388-Orl-19KRS,

2011 WL 3359641, at *7 (M.D. Fla. Aug. 4, 2011).[7]   Accordingly, this Court routinely has ordered stays of actions involving arbitrable claims. *See, e.g.*, *Ownings v. T-Mobile USA, Inc.*, No. 3:12-CV-1385-J-12-TEM, 2013 WL 4401824 (M.D. Fla. Aug. 15, 2013) (Howard, J.); *Abdullah v. American Express Co.*, No. 3:12-CV-1037-J-34MCR, 2013 WL 173225 (M.D. Fla. Jan. 16, 2013) (Howard, J.); *James v. Community Phonebook/Volt Info. Sciences, Inc.*, No. 3:10-CV-872-J-34JBT, 2011 WL 3320481 (M.D. Fla. Aug. 2, 2011) (Howard, J.).   In addition, judicial economy recommends that the Court retain jurisdiction so it can enforce the arbitral award.

If the Court compels arbitration, it should order a stay in accordance with the Eleventh Circuit's stated preference and with 9 U.S.C. § 3.

---

[7] Only one of the cases cited by Citi considers in any depth whether a court should stay or dismiss an action when ordering arbitration. *See Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1321 (11th Cir. 2001) (no discussion); *Chapman v. Lehman Bros., Inc.,* 279 F. Supp. 2d 1286, 1290 (S.D. Fla. 2003) (citing only a District of New Jersey case).   In *Gilchrist v. Citifinancial Services, Inc. 334, LLC,* when both the defendant and the plaintiff sought to dismiss the case; Magistrate Judge Spaulding noted that the Eleventh Circuit likely would "permit" dismissal of arbitrable claims based on previous instances of acquiescence.   No. 6:06-CV-1727-Orl-31KRS, 2007 WL 177821, at *4 (M.D. Fla. Jan. 19, 2007).

BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
Professional Association

By:   s/John A. DeVault, III
       John A. DeVault, III
       Florida Bar No. 103979
       E-Mail:  JAD@bedellfirm.com
       Michael E. Lockamy
       Florida Bar No. 069626
       E-Mail:  MEL@bedellfirm.com
       The Bedell Building
       101 East Adams Street
       Jacksonville, Florida  32202
       Telephone:  (904) 353-0211
       Facsimile:  (904) 353-9307

Trial Co-Counsel for Plaintiff

       FORTUNE LAW OFFICES
       Professional Association
       Scott Thomas Fortune
       Florida Bar No. 342815
       E-Mail:  SFortune@FortuneLegal.com
       1807 3rd Street North
       Jacksonville Beach, Florida 32250
       Telephone:  (904) 246-2125
       Facsimile:  (904) 246-1551

Trial Co-Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 29th day of August, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/John A. DeVault, III
John A. DeVault, III
Florida Bar No. 103979
E-Mail:  JAD@bedellfirm.com
Bedell, Dittmar, DeVault, Pillans & Coxe, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
Telephone:  (904) 353-0211
Facsimile:  (904) 353-9307

Counsel for Plaintiff