UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KRISTI N. BAGEANT-EPPERSON,

       Plaintiff,

vs.

                            Case No.: 3:13-cv-00969-J-34-JRK

CITIGROUP, INC.,

       Defendant.

_____

## DECLARATION OF KRISTI N. BAGEANT-EPPERSON

I, Kristi N. Bageant-Epperson, declare pursuant to 28 U.S.C. § 1746 as follows:

1.    I am the plaintiff in the above-titled action.  I make this declaration in support of Plaintiff's Response in Opposition to Defendant's Motion to Dismiss and Compel Arbitration.  All of the statements contained herein are true and correct based on my personal knowledge.

2.    In 1990, after working at a telecommunications company to support myself while I studied as a full-time college student, I graduated with a Bachelor of Science degree from Liberty University.

3.    Since graduation, I have worked for Citigroup, Inc. and its affiliates ("Citi") for my entire twenty–three year professional career. During my time with Citi, I have been promoted many times; the following paragraphs list a number of these promotions.

4.    In 1990, Citi hired me to fill the entry–level management position of Customer Service Unit Manager, for which I received an annual salary of about $27,000.

5.    Because of my hard work, leadership, and the success of my team members, I have without exception received exemplary performance reviews and have steadily obtained more responsibility and additional leadership roles within the organization.

6.    After working for four years in the entry–level management position of Customer Service Unit Manager, I was selected to be the project manager of Citi's Universal Customer Support System. Two years later, I was promoted to operations manager, and after another two years I was designated as the director of Citi's U.S. Project Management Center.

7.    In 1999, I was selected to lead Citi's customer service department as its Jacksonville Director. In this role, I was responsible for the sales activities of the more than 1,300 full-time employees in the Jacksonville area. After three years in this role, I was promoted to Senior Regional Director of the department, and tasked with the additional responsibility of overseeing customer service departments in Kansas City,

Missouri and Florence, Kentucky, in addition to the Jacksonville site.  In this role, I was responsible for more than 2,700 full-time employees.

8.     In 2003, I was selected to serve in two roles: Chief of Staff of Cards Operation and Technology and Jacksonville Site President.  As Chief of Staff, I was responsible for helping shape the strategic vision of the Cards Operation and Technology department and developing guidelines for thirty-three Citi worksites.  While in this role, I continued to serve as Jacksonville Site President, where I oversaw a growing number of employees.

9.     In 2005, I was promoted to Executive Vice President and North America Operations and Technology Chief of Staff, as well as Citi State Officer for Florida.   Among other tasks, I was responsible for managing Citi's global workforce management and for developing site guidelines for seventy Citi work sites.   Three years later, I was selected to lead Citi's Branch Services to oversee the more than 1,000 Citi banking branches while continuing as Jacksonville Site President.

10.    Finally, in 2010, I was again promoted, and served at once in three roles: Managing Director of Global Consumer Strategic Execution, Site President of Citi's Jacksonville offices, and Citi State Officer for Florida.  As Managing Director, I reported to Don Callahan, Citi's former chief administrative officer who reported directly to Citi's chief executive officer.   As Site President, I oversaw the 4,600 employees at Citi's

3

Jacksonville offices.  Commensurate with this level of responsibility, I was compensated about $900,000 annually while in these roles.

11.   I understand that Citi contends that by providing an "electronic signature" I agreed to its arbitration policy.  But Citi required me to provide an "electronic signature" before it would allow me to read the arbitration policy.  I was not allowed to see the "contract" Citi contends I agreed to until *after* Citi collected an "electronic signature." The website that acts as the gatekeeper for the U.S. Employee Handbook (which contains the arbitration policy) makes clear that my ability to download and read the handbook was conditioned on me first providing my electronic signature:  "Please click the 'I Acknowledge' button below. Once you acknowledge, you'll have the ability to download and print your copy of the Handbook."   Declaration of Nancy Hoover Ubal, Exhibit A (Doc. No. 5-1, at 2).

12.   While employed at Citi, at no time was I given the opportunity to negotiate the terms of Citi's arbitration policy.

13.   Moreover, as an employee who has spent my entire career at Citi—and who depended on my employment there—I had no choice but to acknowledge the receipt of the policy; terminating my employment was not a legitimate option.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August __28__, 2013.

_____
KRISTI N. BAGEANT-EPPERSON