UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KRISTI N. BAGEANT-EPPERSON,

        Plaintiff,

vs.                              Case No.: 3:13-cv-00969-J-34JRK

CITIGROUP, INC.,
a foreign profit corporation,

        Defendant.
_____

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND COMPEL
<u>ARBITRATION AND REQUEST FOR ORAL ARGUMENT</u>**

    Tellingly, in its reply, at no point does Citi touch on the fundamental unfairness of its Arbitration Policy ("Policy") or grapple with the charade of consent that renders its Policy unenforceable as illusory and unconscionable.

**I. Citi Cannot Account for the Core Imbalance that Makes Its Arbitration
Policy Illusory and Unconscionable.**

    Citi cannot answer for the basic flaw in its argument: Citi announced an Arbitration Policy that requires all employees to arbitrate their claims—no exceptions. But Citi allows itself, upon short notice, to opt-out of arbitrating its

own actions. There is no mutual obligation to arbitrate; the burden is shouldered only by Citi's employees and is therefore unenforceable. "One who in words promises to render a future performance, if he so wills and desires when the future time arrives, has made no real promise at all." *Rosenberg v. Lawrence*, 541 So. 2d 1204, 1206 (Fla. 3d DCA 1988) (quoting 1 *Corbin on Contracts* § 149 (1963)) (internal quotation marks omitted). When remedies provided "are neither mutual nor reasonable," *Ocean Dunes of Hutchinson Island Dev. Corp. v. Colangelo*, 463 So. 2d 437, 440 (Fla. 4th DCA 1985), or when a contract "permit[s] one party to breach with impunity," *Blue Lakes Apartments, Ltd. v. George Gowing, Inc.*, 464 So. 2d 705, 709 (Fla. 4th DCA 1985), the agreement is unenforceable as illusory.

In Florida, this type of false bargain also renders Citi's Policy substantively unconscionable. When those forced to sign an adhesion contract are bound to arbitrate, but the party imposing the contract keeps the ability to sue in court, the agreement is substantively unconscionable because it creates "an unfair advantage." *Bellsouth Mobility LLC v. Christopher*, 819 So. 2d 171, 173 (Fla. 4th DCA 2002). For every practical purpose, Citi does not agree to arbitrate its own claims. Without a meaningful mutual promise, Florida courts recognize substantive unconscionability in arbitration agreements. *Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d 990, 992 (Fla. 4th DCA 2004).

Instead of taking on this central issue, Citi's Reply does no more than reinforce what Plaintiff acknowledged in her Response: Florida law does not directly address the illusoriness and unconscionability of the Citi Arbitration Policy in this case, and analogical precedents are mixed. Understandably unwilling to defend the fundamental unfairness of its Arbitration Policy, Citi falls back on case citations that do little more than muddy the waters.

Front and center, Citi five separate times invokes *Vince v. Specialized Services, Inc.*, No. 8:11-cv-1683-T-24-TBM, 2011 WL 4599824 (M.D. Fla. Oct. 3, 2011). (Doc. 19 at 2, 3, 7.) But in *Vince*, the Court did not discuss the issue here: whether an employer's ability to unilaterally and completely revoke its promise to arbitrate renders an agreement substantively unconscionable. Instead, *Vince* spent only half of a sentence addressing the defendants' ability "to alter the terms of the Employee Handbook." 2011 WL 4599824, at *3. Allowing an employer to make innocuous alterations to an arbitration policy is one thing; permitting Citi to feign mutuality while retaining its get-out-of-arbitration-free clause is entirely another.

## II. Citi Fails to Acknowledge the Realities that Render Its Arbitration Policy Procedurally Unconscionable.

In addressing procedural unconscionability, Citi, again, fails to recognize the reality of the arrangement it created: Citi forced Plaintiff to "agree" to the Policy

3

before allowing her to read it. She had no meaningful choice to reject what is undisputedly a contract of adhesion.

With respect to the current Policy, Plaintiff was forced to sign the acknowledgment form *before* Citi allowed her to review its terms. Bageant-Epperson Decl. ¶ 11 (Doc. No. 14). Citi does not contend otherwise. Instead, it trots out acknowledgment forms from many years past, from a time when Citi took the noble step of allowing its employees to read the policy before demanding their assent. That time, and courtesy, is now past. In any event, it is unclear why Citi deems its Employee Handbooks from 2001, 2004, or 2006 relevant: Citi does not—and cannot—argue that they are currently binding, as each successive Handbook specifies that it supersedes all others. *See, e.g.*, Ubal Decl., 2013 Handbook at 4 (Doc. No. 5-1 at 6). Further, Citi's Policy has changed over the years. The only Policy at issue is the one in effect in 2013, and it is undisputed that Plaintiff was forced to "agree" to its terms before being given any chance to read it.

Cases involving agreements that parties could read before signing provide little insight to procedural unconscionability here. For example, in *Vince* the plaintiff was given the arbitration agreement at the same time she received the acknowledgment form; she was able to read the policy before signing her acknowledgement. Here, however, it is undisputed that Citi did not allow Plaintiff

to view the current Policy until after she "agreed" to it. Cases cited by Citi do not support its proposition that a contract can form before one party is given an opportunity to learn of its terms.

Regardless, Plaintiff lacked doctrinally crucial "meaningful choice," *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 575 (Fla. 1st DCA 1999), not least because of Citi's culture of gender discrimination. Plaintiff knew from bitter experience that, at Citi, her gender exposed her to retaliation disproportionate to that felt by men who raised complaints or opposed superiors. "Since Plaintiff objected to Defendant's discriminatory treatment [in 2010], several members of Citi's Senior Management and Human Resources have discriminated and retaliated against her." Compl. ¶ 15 (Doc. No. 2); *see also* EEOC Charge of Discrimination (Doc. No. 1-3 at 4-5). Citi has not discriminated or retaliated against similarly situated males. Compl. ¶ 16. Citi's sexually discriminatory climate further robbed her of any choice; by offering any opposition to the Policy, she would only make herself a larger target for gender discrimination.[1]

---

[1] Citi has repeatedly faced accusations that it is an outdated "boys club" where men dominate the senior ranks of Citi's management and executive positions. *Citigroup Slammed With Lawsuit by Former Female Employees*, NPR News (Oct. 19, 2010), http://www.npr.org/templates/story/story.php?storyId=130673608; *Amochaev v. Citigroup Global Markets, Inc.*, No. C-05-1298 PJH (N.D. Cal. Aug. 13, 2008) ($33 million settlement in class action gender discrimination case). Citi CEO Michael Corbat has only one female on his fifteen-member senior management team. *See*

Citi wishes to zealously enforce an appendix of a seventy-page electronic file that could only be opened after acknowledgement, delivered to the crowded inbox of a woman who knew confrontations with Citi superiors would exacerbate the sex-based retaliation she was already feeling. Yes, Plaintiff is an accomplished, skilled executive—but not one immune to the currents of sexual discrimination coursing through Citi senior management. Viewed together, the situation gave Plaintiff but one option, the same one Citi all too often demands of its female employees: silent passivity.

### III. Citi's Ability to Revoke Its Policy Is Inseverable.

Similarly, Citi's failure to confront the premise of Plaintiff's position dooms its arguments on severability. Because the Policy is illusory, no aspect of it can be enforced. However, even if the Policy were only unconscionable because of Citi's unilateral ability to revoke, the nature of that provision cannot be severed, and the entire Policy must fall. Far from an isolated contract term, Citi's unilateral revocation authority permeates every aspect of its Policy. A party will write quite different rules for others if it expects it too will have to follow them. It will also think twice about rigging a game when it knows it is next to play. Citi's unilateral

---

*Citi CEO Michael Corbat Announces Management Team*, Citigroup (Jan. 7, 2013), http://www.citi.com/citi/news/2013/130107a.htm.

ability to rescind or change its Policy goes to the "essence of the parties' contract" and Citi's "intent" in entering it. *FL-Carrollwood Care, LLC v. Gordon*, 72 So. 3d 162, 167 (Fla. 2d DCA 2011).  Furthermore, one of the Policy's chief benefits to Citi was that, in effect, only employee claims would face mandatory arbitration; in Florida, contracts have been held inseverable when "a substantial part of the benefit to be gained by one of the parties had been found invalid." *Slusher v. Greenfield*, 488 So. 2d 581-82 (Fla. 4th DCA 1986).

## Conclusion

The Court should deny Citi's Motion.  Even if arbitration were appropriate, the Court should stay, not dismiss, the action.  Offering no rebuttal, Citi's Reply all but concedes a stay would be proper pursuant to 9 U.S.C. § 3 and *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (per curiam).

## Request for Oral Argument

Pursuant to Local Rule 3.01(j) Plaintiff requests oral argument on the motion and estimates that a total of thirty (30) minutes will be required for argument.

BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
Professional Association

By:   s/John A. DeVault, III
      John A. DeVault, III
      Florida Bar No. 103979
      E-Mail: JAD@bedellfirm.com
      Michael E. Lockamy
      Florida Bar No. 069626
      E-Mail: MEL@bedellfirm.com
      The Bedell Building
      101 East Adams Street
      Jacksonville, Florida 32202
      Telephone: (904) 353-0211
      Facsimile: (904) 353-9307

      FORTUNE LAW OFFICES
      Professional Association
      Scott Thomas Fortune
      Florida Bar No. 342815
      E-Mail: SFortune@FortuneLegal.com
      1807 3rd Street North
      Jacksonville Beach, Florida 32250
      Telephone: (904) 246-2125
      Facsimile: (904) 246-1551

Trial Co-Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of September, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

        s/John A. DeVault, III
        John A. DeVault, III
        Bedell, Dittmar, DeVault, Pillans & Coxe
        Florida Bar No. 103979
        E-Mail:  JAD@bedellfirm.com
        The Bedell Building
        101 East Adams Street
        Jacksonville, Florida  32202
        Telephone:  (904) 353-0211
        Facsimile:  (904) 353-9307
        Counsel for Plaintiff